All rise. This court is now in session. You may be seated. The clerk will call the next case. 314-0178, people of the state of Illinois, I believe, by the order of Your Honor, Byron v. Casey Zambrano, appellant by Mario Kladdis. Mr. Kladdis, you may proceed. Good morning, Your Honors, counsel. May it please the court, I'm Mario Kladdis, Assistant Appellate Defender with the Office of the State Appellate Defender. I represent the defendant, Appellant Casey Zambrano. Your Honors, Mr. Zambrano was found guilty of first-degree murder after a jury trial, and he was sentenced to 45 years in prison. In this case, the victim here was shot to death in an apartment on the third floor of a building in Joliet. Pedro Sanchez was at the door right before the shooting. The state presented evidence that Sanchez went to the apartment complex with Zambrano and state witness Christian Lopez, and that Zambrano drove them to and from the scene. Security videos showed all three arriving at the complex and leaving, but did not show them enter the building. After the shootings, Zambrano did not go to the police and fled to Texas with his mother and grandmother. When he was arrested, he told the police officer, the arresting officer's name was Juan, not Jesus. But there was no direct evidence in this case of any plan to commit a crime, or even knowledge that the victim would be at the apartment building. Nor was there any physical evidence to connect Zambrano to the apartment where the shooting occurred. As whatever inferences the jurors could have drawn from the evidence in this case, they didn't actually have to draw any, because the state's witness, Christian Lopez, gave the state everything it needed to convict Zambrano. Lopez, but only Lopez, identified Zambrano as the person driving the car. Lopez, but only Lopez, testified that Zambrano was armed, and that he went to the third floor of the building where the victim was killed. Trial counsel recognized the importance of Lopez's testimony to the state's case, and counsel tried to destroy Lopez's credibility in the eyes of the jurors. But to this end, counsel had two crucial tactics to employ. The first thing was making sure the jurors knew that Lopez testified under a grant of use immunity, which would have seriously weakened his credibility. The second thing was making sure that the jurors were instructed on how to analyze and accomplish Lopez's testimony, specifically that they were to closely scrutinize Christian Lopez's testimony and to view it with suspicion. Counsel failed to do both of these things. These omissions were objectively unreasonable, and they deprived Zambrano of a fair trial. In his brief for this court, an appeal, the state gets a number of things wrong. First, with respect to the use immunity that Lopez received, the state argues that it was reasonable for counsel not to tell the jurors he had use immunity because it could have made him more credible, not less credible. This is contradicted by the record and the relevant case law. The use immunity order here absolutely did not allow Lopez to testify, as the state puts it, without consequence or to incriminate himself without consequence. The immunity order did not prohibit the state from prosecuting Lopez with murder. The state could prosecute him for this murder today. All the order did was prohibit the state from using his testimony as evidence against him in a trial if they were to prosecute him for this murder. The state's argument to the contrary just rests on a complete misreading of the immunity order. Also, the order specifically allowed the state to prosecute Lopez for perjury. And here it's important to remember that Lopez has already testified. At the time of this trial, Lopez had already testified against Pedro Sanchez. So under the immunity order, if Lopez were to come into court at Zambrano's trial, and I think the state in its brief mentions that Lopez could incriminate himself without consequence here, if he had done that at Zambrano's trial, he would be almost certainly facing a perjury charge, and the state wouldn't even have to prove which testimony was false, his testimony at Sanchez's trial or at Zambrano's, just that he said something different. Isn't that perjury, that order would allow for, potentially for the state to charge him with perjury, in effect for lying about anything he said on the stand, which may then have been a double-edged sword had his attorney started to open the door questioning him about that, because then obviously the state could have said, well, if you lie about anything here today, you're subject to a charge of perjury. I can see where that would work both ways, where you could have a problem that would allow for the state to use that use immunity order regarding the perjury to bolster his credibility. Possibly, except that the ease with which they could have proved him guilty of perjury just using his previous testimony, I think it would be so much easier to prove perjury in that regard than any other way. I mean, if they think he lied about something else, they have to go find evidence to prove it. Here, they wouldn't need any evidence. If he comes into Zambrano's trial and says, actually, we didn't go inside the building, actually, the thing he took out from under the car was a marijuana pipe, that's it. They don't have to gather any additional evidence. They don't have to talk to any other people. They just charge him with perjury. They present the transcript from the previous trial, and that's it. I guess overall what I'm getting to is that in order for us to reach ineffective assistance of counsel on direct appeal, it has to be pretty crystal clear from the record, because it is something that generally is supposed to be preserved for post-conviction petitions. So do you think that there's no problem finding that the record's pretty clear about this failure, that there's no trial strategy or other things? Yes. This could not be a reasonable trial strategy. If your entire objective is to paint this witness as incredible to the jurors, you can't leave this out. He received a deal for his testimony here. He testifies. We promise not to prosecute using his testimony. That's the deal. You cannot leave that out if you're a trial counsel. The immunity order itself allows them to prosecute him for perjury, for murder, and I think the prosecutor's conduct here shows that having use immunity doesn't make this a more credible witness. If it did, they would have just given it to him. The prosecutors immediately would have granted him use immunity, and if it made him more credible, they absolutely would have told the jurors he had use immunity, if that indeed does make him more credible, but it doesn't. And the cases Zimbrano relies on in his opening and reply briefs demonstrate this. All things being equal, if you are a witness and you testify under a grant of use immunity, you are less credible than you are if you don't have use immunity. The state quibbles with, you know, the state argues that some of these cases are distinguishable from Zimbrano's case, but the fundamental point stands. Use immunity does not strengthen a witness's credibility. It weakens it. The state also argues here that to tell the jurors about Lopez's use immunity would be inconsistent with the defense theory of the case. And the idea is, well, if he needs use immunity, that indicates there's some evidence that he was involved in the crime. I think his counsel's theory of the case here is not that Zimbrano is being wrongly prosecuted. The theory is that he's not accountable for the murder. So you can simultaneously, and you will in most cases simultaneously, have two theories. Yes, there may be enough evidence to charge my client with this crime, and counsel all but conceded that Zimbrano was there in closing argument, while at the same time believing there's not enough evidence to convict him of the crime. There's no inconsistency either legally or logically. Those two things go perfectly well together. Turning to the accomplice witness instruction, the first argument here is that there's just no evidence that Christian Lopez participated in this crime. This argument is just meritless. There is enough evidence. The test here is not whether the state could easily or successfully convict him of the crime. The test for giving the instruction is whether there's probable cause to believe that the witness participated in the offense. That's it. Probable cause. There is probable cause here. I don't want to go through, I don't know that I have time to go through all the things that gave the state probable cause, but I think it's enough to say that the judge essentially found probable cause when she permitted Lopez to invoke his Fifth Amendment privilege. To do that, the court found that he reasonably feared prosecution. He doesn't reasonably fear prosecution if there is a probable cause to charge him with a crime. So the argument to the contrary, that there's no evidence Lopez was involved, I think is meritless. I mean, there was enough for the state to charge him if the state were inclined to charge him. The state was not so inclined because it needed his testimony, and that's why it didn't charge him. The state also argues with respect to the instruction that giving it would have confused the jurors. And this argument seems to be based on the wording of the instruction, which starts when a witness says he was involved in the commission of the offense with the defendant. The problem for this argument is that the case law is clear. The witness doesn't actually have to say, I think he doesn't have to literally say, I was involved in this. In fact, he can literally say, I was not involved in this. He can explicitly deny his involvement, and the defendant will still be entitled to the instruction if there's probable cause to believe the witness was involved. The videotape here documents that Lopez was in the car, reached from the back seat to the front seat, and then left the car. Yes. There was one person who never left the car. Yes. In the back seat. Yes. So doesn't the video alone show enough to make Lopez an accomplice? I think the video with the other evidence, I think, gives the state probable cause to charge him with a crime here. Whether the video alone does, maybe it does, maybe it doesn't, but when the judge is determining if there's probable cause, the judge isn't limited to the video. The judge can consider everything. And here, the judge actually presided over Pedro Sanchez's trial. So she was familiar with... But in terms of whether an accomplice's instruction should have been given to the jury, don't you see enough on the videotape to make Lopez accountable, at least, for the actions of somebody else? If you, again, if... Clarify it for me, because... I mean, knowing what I know about the arrest, knowing the other facts in the case, I think the video, it would definitely be part of this. Again, I don't know. Like, is there enough just based on this? I don't know. Maybe there is. Maybe there isn't. But that isn't the only evidence. But the other facts are that somebody died. Somebody was shot. Yes. And, again, assuming Lopez is telling the truth when he testifies, or to any extent you give his testimony credibility, he's saying a gun was retrieved from under the hood of his car. And so the video shows him doing something that the jurors could probably reasonably infer was him opening the latch of the hood. So, yes. That, in conjunction with... Lopez? Lopez, yes. I thought it was the driver's umbrella. I'm saying the person who reaches from the backseat of the car into the front. Oh, I see. To the cockpit. Yes. Okay. And so, I mean, so, again, the argument that the instruction would have confused the jurors, I think, is just meritless. Finally, as it did with the use immunity, the state argues that telling the jurors, or asking for this instruction, would conflict with counsel's theory of the case. Because it would basically suggest that there was evidence Zimbrano was involved. The instruction doesn't give the jurors new information about the case. The instruction tells the jurors what to do with information that's already there. Specifically, it tells them to look at the accomplice witness' testimony, to view it suspiciously, to closely scrutinize it, even if you might otherwise seem credible. So, there isn't anything new that comes out of the instruction that isn't already part of the case when you ask for the instruction. Counsel, you have two minutes. Thank you. And I think Wheeler, you know, Peabody Wheeler, this court's decision, sort of demonstrates this, you know, the flawness inconsistent with the counsel's theory. In Wheeler, you have a case where the defendant's, the defense counsel's theory is, not only was the defendant not involved in the crime, but wasn't even present when the crime occurred. And this court, nevertheless, found that the instruction had to be given, and that counsel acted reasonably when he didn't ask for it. And here, I think, if anything, if that instruction has to be given in either of these cases, it has to be in Zimbrano's, because at least counsel there had an argument that the defendant wasn't even present in the vicinity of the crime. There's counsel here who conceded that Zimbrano was at least at the apartment complex. Again, your honors, whatever inferences the jurors could have reasonably drawn, they didn't have to draw any, because Lopez came in and gave the state everything it needed to convict Zimbrano. That's why the jurors had to be told that he testified under a grant of use immunity. That's why the jurors had to be instructed on how to view an accomplice witness' testimony. If you're trial counsel in this case, you have to make sure that they know about both of those things. They know about the use immunity grant, and that they're instructed on how to view his testimony. Zimbrano's attorneys did neither, and those omissions deprived him of the effective assistance of counsel and of a fair trial. And we ask the court, respectfully, to reverse the conviction and to order further proceedings in the case. Can you address the issue of whether you're arguing this is cumulative error, or whether a single mistake in judgment by defense counsel would warrant a finding of ineffective assistance? I think in this case, either of these mistakes is sufficient, but the court isn't prohibited from considering them. They're so closely related, I don't think the court is prohibited from considering them together. But either one of these things, I think, is sufficient to reverse this conviction. Thank you. Thank you, Mr. Carter. Mr. Michael Byron. Good morning. You're about to have a life-changing event. A month, in a month, yes. May it please the court, counsel, Lord of Michael Byron, on behalf of the people. So there's more talk about whether Lopez could or could not be charged with perjury, whether the use immunity should, whether there's evidence of use accomplice or not, the effect of various legal points that were never actually presented to the jury in what the defense counsel's theory of the case argued to the jury was. The issue really here is whether counsel was ineffective. Whether counsel was ineffective hinges on whether defendant has overcome the strong presumption that counsel's actions were trial strategy, and whether those actions were trial strategy depends on whether they were consistent with what he was arguing to the jurors, or whether any reasonable attorney could think that was a permissible action. Could an attorney have impeached him with use immunity or tendered the accomplice witness instruction? You know, maybe yes, but there's a wide range of actions that fall within the sphere of trial strategy, decisions that defense counsel gets to make one way or another, and the decisions made in this case were not unreasonable. Regarding use immunity, the state's argument is based on defendant's argument. At page 19 of defendant's brief, defendant's argument as to why the use immunity was so important to present was that without evidence of Lopez having use immunity, the jurors likely believed that Lopez risked prosecution by testifying, and therefore they likely found him more credible than they would have if they'd known he had use immunity. So the people's response was just simply a response to defendant's argument. It's just simply the flip of that. Jurors could have thought that. Defense counsel could have thought jurors might think that. Maybe. But what defense counsel could have just as easily, if not more easily thought, was that jurors might think, oh, he faces prosecution, so he's got to make sure anything he says can be used against him, so he better not say anything that would implicate himself. So jurors could think that he'd be lying to protect himself if he was going to face, if what he was saying could be used as evidence against him at a later trial. So with that possibility out there, counsel could have strategically wanted jurors to think Lopez did risk prosecution by testifying because that would give him a motive to lie to protect himself, and he didn't incriminate himself in his testimony. All he said was, I didn't take the gun, he forced me out of the car. I only got out of the car because he had a gun. So nothing he said was actually incriminatory. And if that premise is accurate, if that was trial strategy, then I think there are, I don't know how that, if that is his trial strategy, then there is no instruction given. I mean, I think that absolutely that you can make an argument with trial strategy not to go into the immunity because of exactly what you said, but that argument then almost makes giving that instruction a necessity because you want to make sure that jury recognizes that this is somebody that could, you know, they're afraid they're going to be prosecuted, that they're involved, that they're part of this. Well, I think there's a tension here because his theory of the case presented to the jurors was that Sanchez, he argued Sanchez and Sanchez alone committed the murder, and kind of that these two may have never even gone into the building. So his argument is that they're not really differently situated. They're both just there. And so if at most we have some video showing Lopez leaning over in the car, well, the video shows defendant reaching into the hood of the car, getting the gun, then putting the gun under the hood, which is much stronger than just the reaching forward motion. So he's trying to say they're similar, then he's not going to want to say the one that just did the reaching is accountable for this crime because if just the reaching is accountable, then surely retrieving the gun from under the hood and being there is going to be sufficient. He argued to the jury that Lopez wasn't an accomplice, and defendant wasn't either. Sanchez and Sanchez alone was the one that committed the murder, and so the instruction says when a witness says he was involved in the commission of a crime with the defendant, and Lopez never said he was involved in the commission of a crime with a defendant, and defense counsel's argument was neither Lopez nor defendant was involved in the commission of a crime at all.  So it's a separate context just to the judge regarding defense counsel trying to prevent Lopez from testifying through the Fifth Amendment privilege, but while he argued to the judge in that context, one thing, the argument to the jurors was separate, so it would have been inconsistent with that strategy. It was made outside of the context of the jurors and not in front of them. The people's argument is that counsel provided effective assistance because these actions can be considered trial strategy, and if there are no further questions, the people ask that this court affirm defendant's conviction and sentence. Thank you. Thank you. Mr. Clattis for rebuttal. With respect to using this to further impeach the youth community, the evidence of Lopez's grudge against the youth community, you know, the jurors are told, you know, you may consider, when they're instructed, they're told you may consider, you know, any interest or bias the witness may have here in evaluating his testimony. Lopez, there's no may about it here. Lopez had an interest. He had a bias. He was given a deal for his testimony. A promise was made. You testify today, and we won't prosecute you for a crime in this case, using your testimony here. The jury has to know about that. There's no way you can leave that out. It's not reasonable strategy. If you need to destroy this guy's credibility, if you need to take the legs out from under his testimony, you can't leave out that he came to a deal with the state. Again, there's no authority for the proposition that this youth community would have made him a stronger witness. The state hasn't cited any authority for this, and I'm not aware of any. The general proposition from all the case law is you cut a deal with the state to testify against a person. All things being equal, you become less credible. It doesn't mean that the jury absolutely has to reject your testimony, but it does mean your attorney has to bring that up at trial and can't leave it out. In terms of whether this is inconsistent with the defense theory, I don't know what else to say about this. I mean, defense counsel's theory, whether or not counsel can think Pedro Sanchez acted alone and still acknowledge that there's enough evidence to charge people with a crime here, and there being enough evidence to charge someone with a crime here means that certain people have incentives to tell certain stories. It affects their credibility because they have a motive to lie to avoid not just conviction of a crime, but prosecution itself, which imposes huge, huge costs on the person charged with the crime, particularly in a murder case. There's simply just no inconsistency with the defense theory of the case that Pedro Sanchez acted alone and telling the jurors that Lopez has use immunity. There isn't a conflict there. Counsel can do both and needs to do both when his entire strategy rests on the jurors not believing Lopez. And in terms, I just wanted to briefly mention, you know, there's some reference to the gun that Zambrano takes out from under the hood of the car. There is no gun in that video, okay? The only way we know there's a gun there for sure is from Lopez, and only if we believe him. Otherwise, it's an inference, and maybe the jurors can make that inference in conjunction with all the evidence in the case. But it's a much weaker inference when you don't have someone telling you that it was a gun. Lopez comes in. He says it was a gun. It drastically changes the state's case. That's why they don't want to go to trial without this guy. That's why they give this guy use immunity to testify. And that's why counsel has to tell the jurors and ask the court to instruct the jurors to view this accomplice witness' testimony with suspicion and to closely scrutinize it. And that's why counsel who fails to tell the jurors this guy is testifying under a grant of use immunity and fails to ask for that instruction is acting objectively unreasonably and depriving his client of the effective assistance of counsel. I have nothing else. Again, we ask the court to reverse Mr. Zambrano's conviction, and it remains a matter for further proceedings. If you're honest, I don't have any other questions. Thank you, Mr. Paz. Thank you, Mr. Michael. Your arguments will be taken under advisement, and a written decision will be issued to you as soon as possible. And with that, we'll stand in a brief recess for panel change. Thank you. All rise. We'll stand in a brief recess.